Ruth L. Cohen, Esq. (NV Bar #1782)
Email: rcohen@caplawyers.com
Paul S. Padda, Esq. (NV Bar #10417)
Email: ppadda@caplawyers.com
COHEN & PADDA, LLP
4240 West Flamingo Road, Suite 220
Las Vegas, Nevada 89103
Tele: (702) 366-1888
Fax: (702) 366-1940
Web: caplawyers.com

Attorney for the Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SHENDONNA SOPHIA McLAINE, | )<br>) |
| Plaintiff, | )<br>)  Case No. 2:14-cv-0288-JAD-GWF |
| v. | )<br>) |
| CLARK COUNTY, NEVADA, LAS VEGAS METROPOLITAN POLICE DEPARTMENT, OFFICER "S. FRIEDMAN," OFFICER "R. ZACCARA," OFFICERS "JOHN DOES" 1 THROUGH 10, | ) *JURY TRIAL DEMANDED*<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## THIRD AMENDED COMPLAINT

Plaintiff Shendonna S. McLaine hereby alleges the following:

**I.**

**JURISDICTION AND VENUE**

1.      This is a civil action brought pursuant to 42 U.S.C. § 1983 ("civil action for deprivation of rights") seeking damages against Defendants for committing acts, under color of state law, with the intent and purpose of depriving Plaintiff of important rights secured under the Constitution and laws of the United States and for refusing or

neglecting to prevent such deprivations and denials to Plaintiff. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 ("federal question") and 1343(a) ("civil rights").

2. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 as the actions described herein occurred in Clark County, Nevada and because each Defendant is domiciled in the State of Nevada.

## II.

## PARTIES

3. Plaintiff Shendonna S. McLaine is, and at all relevant times herein mentioned was, a citizen of the State of California and a resident of the City and County of Los Angeles.

4. Defendant Clark County, Nevada ("Clark County") is a political subdivision of the State of Nevada and is responsible for the administration of the Clark County District Attorney's Office. Clark County has a legal obligation to uphold due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.

5. Defendant Las Vegas Metropolitan Police Department ("Metro") is an agency of Clark County, Nevada. Upon information and belief, Metro directly or indirectly participated in the authorization of the actions at issue here. Upon information and belief, Metro failed to adequately train its officers, including Officers John Does 1 through 10, as to the proper procedures for preserving and producing exculpatory evidence.

6. Officers "S. Friedman" and "R. Zaccara," sued herein in their <u>individual</u> and <u>official</u> capacities, are residents of the State of Nevada. Upon information belief, and at the time of the events in question, Officers Friedman and Zaccara were employees of Metro. At all times relevant to this Complaint, Officers Friedman and Zaccara were acting in the course and scope of their employment and under color of

Nevada law.

7. Officer John Does 1 through 10, sued herein in their individual and official capacities, are residents of the State of Nevada. Upon information belief, and at the time of the events in question, Officer John Does 1 through 10 were employees of Metro. At all times relevant to this Complaint, Officer John Does 1 through 10 were acting in the course and scope of their employment and under color of Nevada law.

8. Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated as Does 1 through 10, inclusive, is responsible in some manner for the events and happenings herein referred to and caused injuries and damages to Plaintiff. Plaintiff further alleges that she cannot currently ascertain the identity of each of the Doe Defendants and Plaintiff will therefore seek leave of Court to further amend this Complaint to insert the true names and capacities of Doe Defendants when they have been ascertained, together with appropriate charging allegations and to join such Defendants in this action.

**III.**

**FACTS**

9. Plaintiff Shendonna McClaine is an African-American female. During all times relevant to this lawsuit, she was, and continues to be, employed by the University of Southern California Pharmacy. Prior to the prosecution referenced in this Complaint, Ms. McClaine had no prior criminal history. In fact, throughout her life, she has been a law abiding, responsible and respectable citizen.

10. Approximately, two years ago, Ms. McClaine was notified by the Los Angeles Police Department ("LAPD") that a warrant had been issued by either the Henderson PD or Metro for her arrest. Shocked and confused by this news, she agreed to meet with LAPD officers believing that a mistake had been made and that,

1  upon meeting her, they would recognize that fact.  Instead, Ms. McClaine, in the
2  presence of her daughter, was placed under arrest by LAPD, taken into custody and
3  told that she would be required to face felony charges in Nevada.

4  11.  On February 15, 2011, Plaintiff made an initial appearance in Henderson
5  Justice Court before Judge Stephen L. George whereupon she was notified that she
6  was being prosecuted by the Clark County District Attorney's Office for, among other
7  things, "shoplifting" at Kohl's Department Store in Henderson, Nevada.  At that time,
8  Ms. McClaine entered a plea of "not guilty" and was appointed representation by the
9  Clark County Public Defender's Office.  She was provided little to no meaningful
10 discovery pertaining to her case.

11 12.  Following her initial appearance, the court was notified by the government
12 that there was "video" evidence pertaining to Ms. McClaine's case even though she had
13 never been provided any such evidence.  Following several court hearings, the court
14 convened a "status check" on July 18, 2011 on the issue of the videos which had still
15 not be produced to Ms. McClaine or her attorney.

16 13.  Subsequently, at yet another court hearing held on August 17, 2011,
17 Ms. McClaine's attorney notified the court that he had still not been provided any
18 videos.  The prosecutor explained to the court that he himself was awaiting the videos
19 from the "Detectives."

20 14.  Two months after the August hearing and approximately eight months
21 after Ms. McClaine's initial appearance, another court hearing was convened on
22 October 11, 2011 during which time the court was advised that the "District Attorney
23 should have videos today."  This representation was surprising since Officers Friedman
24 and Zaccara had executed a "Property Report" on September 23, 2009 referencing the
25 following evidence in their possession: "Below Videos Are From Kohls and Lowes Of

4

1  The Above Suspect." The "suspect" identified in th Property Report was Ms. McLaine.
2  Accordingly, it was unclear why it took nearly two years for the police to provide the
3  prosecutor with alleged "evidence" of Ms. McLaine's culpability.

4    15. On January 25, 2012, at yet another hearing, the court was notified that
5  the videos had finally been received. Ms. McClaine and her attorney viewed the videos
6  and immediately realized that the individual on the videos allegedly committing crimes
7  at Kohl's Department store, for which Ms. McClaine was now being prosecuted, bore no
8  physical resemblance whatsoever to Ms. McClaine. Understandably concerned,
9  Plaintiff's criminal attorney immediately contacted the prosecutor and invited him to
10 view the videos provided by the government in the presence of Ms. McClaine.
11 Accepting this invitation, the prosecutor viewed the videos with Ms. McClaine present.
12 Upon realizing she was clearly not the person in the video, the prosecutor, to his credit,
13 turned to her and stated "I know you didn't do this."

14   16. Deeply relieved and grateful that the prosecutor acknowledged her
15 innocence, Ms. McClaine, a law abiding and respectable individual, was devastated
16 over the fact that her life had been upended and that she had been subjected to
17 extreme humiliation on account of being accused of a felony and subjected to a criminal
18 prosecution. Had the video "evidence" been properly provided to Ms. McLaine, and for
19 that matter the Clark County District Attorney's Office, at the outset, she would have
20 never been prosecuted or subjected to the ordeal of being under felony charges for
21 nearly a year of her life.

22   17. On February 28, 2012, the Clark County District Attorney's Office
23 dismissed the criminal complaint against Ms. McLaine. Recognizing the devastation
24 the prosecution had on her life, and would continue to have, the Clark County Public
25 Defender provided Ms. McClaine with a letter she could provide to, among others, her

26                5

employer which stated: "After several continuances, the case was finally dismissed on February 28, 2012, as she had been wrongfully accused of theft related offenses." *See* Exhibit A.

### IV.

### LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF

**(Violation Of The Fourteenth Amendment To The United States Constitution)**
**42 U.S.C. § 1983**

18. Plaintiff realleges and incorporate by reference the allegations contained in paragraphs 1 through 17 above as though fully set forth herein.

19. At all times herein mentioned, Defendants had an obligation to comply with the due process requirements set forth in the Fourteenth Amendment to the United States Constitution. Defendants failed to meet this obligation with respect to Plaintiff.

20. In the conduct described above, Defendants acted willfully, wontonly, maliciously, abusively, oppressively and with conscious disregard and/or deliberate and/or reckless indifference to Plaintiff's rights. By withholding and suppressing clearly exculpatory and material evidence, Defendants violated Plaintiff's well established due process rights guaranteed by the Fourteenth Amendment through an abuse of process and by subjecting her to a malicious prosecution.

21. At all times herein mentioned, Defendants John Does 1 through 10 and Officers Friedman and Zaccara acted or purported to act within the course and scope of their employment and under color of law, as well in their own individual capacities.

22. At all times herein relevant, government Defendants failed to implement adequate policies and programs to train their employees as to the proper manner of handling exculpatory evidence. Upon information and belief, government Defendants

knew or should have known that their failure to provide reasonable training would likely result in violation of the due process rights of a person in Plaintiff's situation. Upon information and belief, government Defendants' failure to provide adequate training was a substantial factor in the deprivation of Plaintiff's due process rights.

23. As a direct and proximate result of Defendants' policies, practices, conduct and acts alleged herein, Plaintiff was denied her Constitutional rights and was maliciously prosecuted, subjected to abuse of process and falsely imprisoned. Although proceedings terminated in Plaintiff's favor when government Defendants were required to dismiss their prosecution against her based upon the irrefutable evidence of innocence, she suffered, and continues to suffer, mental and emotional distress, humiliation, embarrassment, anxiety and pain. Indeed, Defendants' actions interfered with Plaintiff's liberty, disrupted her employment, drained her financial resources, curtailed her associations, subjected her to public obloquy and created significant anxiety in Plaintiff, her family and her friends. The public stigma will remain with Plaintiff for the rest of her life because she will forever have to answer "yes" when asked if she has ever been charged with a felony crime involving moral turpitude. Defendants' misconduct justify an award to Plaintiff of compensatory and punitive damages in an amount to be determined at trial.

## V.

## **DEMAND FOR TRIAL BY JURY**

24. Pursuant to the Seventh Amendment of the Constitution and Federal Rule of Civil Procedure 38, Plaintiff invokes her right to a trial by jury on all issues relevant to this Complaint.

. . .

. . .

# VI.

# **RELIEF REQUESTED**

25. Wherefore, Plaintiff requests judgment and relief as follows:

   i. For general (compensatory) damages in an amount according to proof, but no less than $100,000.00;

   ii. For expenses pertaining to mental and emotional therapy in an amount according to proof;

   iii. For exemplary and punitive damages against all Defendants in an amount to be determined at trial;

   v. For reasonable attorney's fees and costs, as permitted by 42 U.S.C. § 1988;

   vi. For pre and post judgment interest on any award rendered in connection with this civil action;

   vii. For such other relief as the Court may deem proper and just.

/s/ *Paul S. Padda*
_____
Ruth L. Cohen, Esq.
Paul S. Padda, Esq.
COHEN & PADDA, LLP

Attorney for Plaintiff

Dated: July 28, 2014