**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Shendonna Sophia McLaine, | 2:14-cv-00288-JAD-GWF |
| Plaintiff | **Order Granting Summary Judgment** |
| v. | [ECF No. 110] |
| Clark County, Nevada and Clark County District Attorney's Office, | |
| Defendants | |

Plaintiff Shendonna McLaine sues Clark County, Nevada, and the Clark County District Attorney's Office (CCDAO) for violating § 1983 of the Civil Rights Act after it took law enforcement nearly two years to give her exculpatory video footage in her criminal prosecution.[1] The Government moves for summary judgment, arguing, among other things, that none of McLaine's constitutional rights were violated, and thus, her claim fails as a matter of law. I agree, so I grant the motion.

**Background**

McLaine was prosecuted by the CCDAO under the belief that she shoplifted from a Kohl's department store.[2] Kohl's had video footage of the theft and provided it to the Las Vegas Metropolitan Police Department on September 23, 2009.[3] Several months later, McLaine was arrested, and a criminal complaint was filed.[4] McLaine's preliminary hearing was initially set for

---

[1] ECF Nos. 1, 4, 5, 12, 81 (Complaint and Amended Complaints 1–4).

[2] ECF No. 110-4 at 23.

[3] ECF No. 122 at 28 (58:6–59:16 of the transcript).

[4] ECF No. 110-2.

May 11, 2011, but it was rescheduled to July 18, 2011,[5] because her defense attorney had not yet received a copy of the video footage from the prosecution. Her preliminary hearing was rescheduled several more times because the prosecution still had not given McLaine a copy of the video.[6] Between January 25 and February 28, 2012, McLaine acquired the video footage and watched it with the prosecutor. She was not the Kohl's shoplifter, so the prosecutor dismissed the case,[7] the preliminary hearing never occurred, and a trial date was never set. McLaine now sues Clark County and the CCDAO under 42 U.S.C. § 1983, arguing that the delay in turning over the exculpatory video footage violated her constitutional rights.[8]

## Discussion

### A.  Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[9] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[10] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[11]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

---

[5] ECF No. 110-4 at 7–8.

[6] ECF No. 110-4 at 9–19.

[7] ECF No. 110-4 at 23.

[8] ECF Nos. 1, 4, 5, 12, 81.

[9] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[10] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[11] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

facts showing that there is a genuine issue for trial."[12] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[13]

**B.  Summary judgment is granted because the plaintiff has not shown that she was deprived of a constitutional right.**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[14] A municipality can be held liable under § 1983 if: (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy "amounts to deliberate indifference" to that constitutional right; and (4) the policy is the "moving force behind the constitutional violation."[15] McLaine's claim falters at step one: there is no evidence that one of her constitutional rights was violated.

In a criminal case, the government is under an affirmative duty to disclose exculpatory evidence to the defense before trial.[16] And in *Brady v. Maryland*,[17] the Supreme Court held that a prosecutor's failure to timely turn over exculpatory evidence to a criminal defendant can violate

---

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[13] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[14] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[15] *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)).

[16] *See U.S. v. Alderyce*, 787 F.2d 1365, 1369 (9th Cir. 1986) ("The duty to disclose exculpatory evidence prior to or at trial exists even in the absence of a specific request for the evidence by defense counsel.").

[17] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

that defendant's constitutional right to a fair trial. But no controlling authority holds that the prosecution is required to disclose exculpatory evidence before the defendant's preliminary hearing, and *Brady*'s rule and rationale do not support such an extension.

*Brady* and its progeny stand for the proposition that the government's delay in turning over exculpatory information *in a case that goes to trial* violates the accused's due-process right to a fair trial,[18] not merely that late disclosure effects a generic due-process violation. "The critical question in delayed disclosure cases is whether the evidence was disclosed 'in time for its effective use at trial.'"[19] As the *Brady* court explained, "[t]he principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused."[20]

When a case is dropped before trial, the right to a fair trial protected by *Brady* is not implicated. Other circuits have foreclosed § 1983 claims for *Brady* violations where there has been no conviction.[21] The Ninth Circuit has not yet followed suit, but it came close in *Smith v. Almada*,[22] in which the panel affirmed the district court's entry of summary judgment on a §

---

[18] *See Milke v. Ryan*, 711 F.3d 998, 1002 (9th Cir. 2013) (citing *Brady*, 373 U.S. at 87, and *Giglio v. United States*, 405 U.S. 150, 153 (1972)).

[19] *United States v. Alvin*, 30 F. Supp. 3d 323, 334 (E.D. Pa. 2014) (quoting *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983)); *see also St. Germain v. United States,* 2004 WL 1171403, at *12 (S.D.N.Y. May 11, 2004) (noting that the key to a *Brady* violation is "whether, in light of all the circumstances, able defense counsel had a reasoned opportunity to put the exculpatory material to work"); *see also Skinner v. Switzer*, 562 U.S. 521, 533 (2011) ("a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction"); *U.S. v. Agurs*, 427 U.S. 97, 103 (1976) ("The [*Brady* rule] arguably applies in three quite different situations. Each involves the discovery, *after trial* of information which had been known to the prosecution but unknown to the defense.") (emphasis added).

[20] *Brady*, 373 U.S. at 87–88.

[21] *See, e.g., Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff, however, was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*.").

[22] *Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011).

1983 due-process claim that was based on *Brady*. The panel found that "Smith's *Brady*-based § 1983 claim fail[ed] because he ha[d] not shown that the withheld evidence was material," so it declined to reach the "substantive idea that a conviction is a prerequisite to a *Brady* claim."[23] But *Smith*'s author[24] wrote a separate concurrence to explain that he would have also held that Smith's claim failed for lack of a conviction. He noted that "[n]o known cases have allowed a *Brady*-based § 1983 claim where there has not been a conviction." And he concluded that "allowing *Brady*-based § 1983 claims without a conviction is not compelled by our circuit's case law, conflicts with other circuits' case law and the central purpose of *Brady*, would render *Brady*'s materiality standard significantly less workable, and lacks a limiting principle."[25]

In an unpublished decision the following year, another Ninth Circuit panel rejected a *Brady*-based habeas claim in which the petitioner claimed that "the state violated his due process rights under *Brady* when it failed to disclose" *Brady* material before the defendant's pretrial hearing. The panel reasoned that "existing Supreme Court case law does not clearly establish that the prosecution [is] required to disclose [exculpatory evidence] before . . . [the defendant's] preliminary hearing."[26]

I am persuaded by Judge Gwin's reasoning in *Smith*, and I adopt it here. As the Supreme Court recognized in *Strickler v. Greene*, not all breaches of "the broad obligation to disclose exculpatory evidence" rise to a due process violation under *Brady*.[27] "Strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."[28] This

---

[23] *Smith*, 640 F.3d at 941 (Gould, J., concurring).

[24] District Judge Gwin, sitting by designation.

[25] *Id*. at 945 (Gwin, J., concurring).

[26] *Jaffe v. Brown*, 473 Fed. Appx. 557, 559 (9th Cir. 2012) (unpublished).

[27] *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

[28] *Id*.

5

necessarily means that, for the delay in disclosure of exculpatory evidence to rise to a constitutional violation, there has to be a conviction. Because McLaine's case never even made it past the preliminary-hearing phase, she cannot state a *Brady*-based due process claim under § 1983.

Tacitly recognizing this deficiency, McLaine argues that the Ninth Circuit's ruling in *Goldstein v. City of Long Beach*[29] supplies the constitutional right for this case: "the Constitutional violation arose . . . from a custom of failing to adhere to administrative procedures intended to govern the timely disclosure of evidence."[30] But *Goldstein* does not recognize this new breed of Constitutional right. It is a prosecutorial-immunity case, and the portion that McLaine focuses on asks whether Goldstein was challenging "administrative policy and accompanying training" or "prosecutorial training and policy," issues that are wholly impertinent to our discussion.[31]

McLaine's reliance on *Goldstein* is further misplaced because Goldstein's constitutional rights under *Brady* were clearly violated. Goldstein was convicted of murder—a conviction founded on the perjured testimony of an unreliable jailhouse informant, whom prosecutors in the Los Angeles District Attorney's Office knew had an undisclosed history of perjury and was receiving a sentence reduction for his testimony.[32] Goldstein served 24 years of his sentence before his petition for writ of habeas corpus was granted.[33] McLaine, in contrast, received her exculpatory evidence well before trial—even before her preliminary hearing.

In sum, McLaine has failed to demonstrate that the delay in producing the exculpatory video footage violated any Constitutional right, so the defendants are entitled to summary

---

[29] *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013).

[30] ECF No. 122 at 10–11.

[31] *See Goldstein*, 715 F.3d at 762.

[32] *Id.*

[33] *Id.* at 752.

judgment as a matter of right. And because I grant the motion for summary judgment on this basis, I decline to reach the defendants' remaining arguments.

### Conclusion

Accordingly, with good cause appearing and no just reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the defendants' motion for summary judgment **[ECF No. 110] is GRANTED.** The **Clerk of Court is directed to enter judgment in Clark County, Nevada's and the Clark County District Attorney's Office's favor** and **CLOSE THIS CASE**.

DATED: September 8, 2017.

_____
Jennifer A. Dorsey
United States District Judge